Warren R. Batt, Sr. and Optat M. Batt v. Commissioner.
Batt v. Commissioner
Docket No. 4919-62.
United States Tax Court
T.C. Memo 1965-104; 1965 Tax Ct. Memo LEXIS 223; 24 T.C.M. (CCH) 565; T.C.M. (RIA) 65104; April 20, 1965
Norman W. Prendergast, Maison Blanche Bldg., New Orleans, La., for the petitioners. Max B. Silverberg, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income tax for the calendar years 1959 and 1960 and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations, in the following amounts: Additions to Tax
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954
1959
$494.42
$24.72
1960
505.04
25.25
The principal issue *224 is the amount of net income derived by Warren R. Batt, Sr., from the operation of a taxicab. Also at issue is the question whether petitioners are liable for the additions to tax. Some facts are stipulated. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners are husband and wife, residing in Kenner, Louisiana. They filed joint Federal income tax returns for the calendar years 1959 and 1960 with the district director of internal revenue at New Orleans, Louisiana. The returns reported salaries or wages earned by Optat Batt in the employ of a department store in New Orleans and income derived by Warren Batt, hereinafter referred to as the petitioner, as a taxicab driver. Petitioner was an independent taxicab driver from 1949 through the years 1959 and 1960, operating under the name of Liberty Bell Cab Co. In 1959 and 1960 he operated a 1953 Chrysler sedan taxicab. It was not radio-operated nor did he have access to driver telephone facilities. In 1959 and 1960 he operated his taxicab primarily in the French Quarter of New Orleans, except during the last one and one-half months of 1960, at which *225 time he operated between Moisant International Airport and the downtown business section of New Orleans. During these years he drove his cab approximately 30,000 miles per year in the operation of his business. The distance from petitioner's home in Kenner to the French Quarter of New Orleans is approximately 12 miles. During the years 1959 and 1960 the petitioner did not prepare taxicab trip reports in connection with his business, as required by the City Ordinance of New Orleans. Petitioner was aware of such requirement. Petitioner retained slips of paper, approximately 3 X 5 inches, on which he made penciled notes representing the amounts collected from individual trips, with a total representing the day's collections, each slip being for a different day. The slip also contained a notation of expense for gasoline or oil. The slips did not show the points of origin or destination of each trip, the times of beginning or completion, or the number of passengers carried. Petitioner's records for the last one and one-half months of 1960 showed only one amount for the taxicab receipts of each day for which he had records. The amount collected for each trip was not shown on such *226 records. In 1959 and 1960 petitioner usually worked nine hours per day and six days per week. He worked 254 to 270 days each year. His average number of trips was 16 or 17 each day, the average fare he collected was $1 per trip, and the average tip was 10 cents per trip. He also received some amounts from restaurants for directing patrons to them. Petitioner's tax returns reported the following amounts relating to his taxicab business: 1959
1960
Total receipts
$2,961.30
$3,349.65
Taxes on business property
70.50
70.50
Depreciation
500.00
Repairs
1,244.17
Other expenses
1,592.54
1,218.77
Net profit
798.26
816.21
In 1960 petitioner rented another cab at $6 per day for 36 days at a total rental of $216 while his own cab was being repaired. Petitioner's returns did not separately report receipts of payments by restaurants for bringing patrons to them. The records of Toye Brothers Yellow Cab Company, of New Orleans, show that in 1959 and 1960 cab drivers in its employ averaged gross receipts of $16 to $17 per nine-hour shift. Such drivers received 40 percent of the gross receipts they turned in. The company was in need of additional drivers *227 in those years. Petitioner had net taxable income from his taxicab business in 1959 and 1960 of $2,100 each year. Opinion Petitioner Warren R. Batt, Sr., operated as an independent taxicab driver in New Orleans from 1949 through the taxable years 1959 and 1960. In these taxable years he reported gross receipts from that business of only $2,961.30 in 1959 and $3,349.65 in 1960 and net income of only $798.26 for 1959 and $816.21 for 1960. The records he maintained for verification of the earnings reported were, in the opinion of the respondent, inadequate, and respondent thereupon determined the petitioner's income by other methods. Respondent ascertained that drivers employed by a taxicab fleet corporation in New Orleans working on nine-hour shifts had gross receipts of about $16 to $17 per shift, received a commission of 40 percent of the receipts turned in, and retained any tips received. Some of these cabs had radio connections with the dispatcher and the others had telephone station facilities for calling in to the dispatcher. From the information relating to the employed drivers, respondent determined that the petitioner had net earnings of at least $2,800 each year from *228 his taxicab business. Petitioner was interviewed by internal revenue agents relative to the items reported in the returns for 1959 and 1960. According to the agents, he stated that he worked approximately nine hours per day for six days each week and for 50 weeks each year; that he made on the average 16 to 17 trips per day, collected an average fare of $1 per trip, and received an average tip of 10 cents; and that he received, also, on the average, $1 per week from restaurants for directing patrons to them. Respondent also computed petitioner's gross taxicab income upon the basis of the statements he made to the internal revenue agents. In this computation it was assumed that petitioner made an average of 16 1/2 trips per day and collected fares averaging $1 and tips of 10 cents per trip, a total of $18.15 per day. It was also assumed that he worked six days each week and 50 weeks, or 300 days each year, which would yield a gross income of $5,445 per year. Deducting the expenses claimed on the tax returns as business expenses results in net income in excess of $2,900 each year, which respondent reduced to $2,800 as a reasonable estimate of net earnings. To this, respondent added *229 $50 per year as amounts received from restaurants for directing patrons to them. The ordinances of the City of New Orleans governing the operation of taxicabs in that city in 1959 and 1960 [1] require the drivers to make trip reports recording certain details of their trips each day. The owner of the cab is required to preserve these records for not less than 90 days. The petitioner was aware of the requirements of the ordinance and had been informed by a revenue agent that making and retaining such trip reports would be a good indication of his income because of the information there recorded. Petitioner made no such reports nor did his records contain information such as was required by the ordinance. *230 Petitioner contends that he worked for only 254 days in 1959 and only 270 days in 1960; that his records of daily earnings were adequate to verify his reported receipts; and that his expenses as shown by various exhibits introduced support his contention of net income. The respondent points out that had petitioner made and retained trip reports, such as those required by the city ordinance, it would be possible to verify at least some of the trips and to determine the probable amounts of the fares from the distances traveled and the number of passengers carried. The petitioner's business was one in which income received may easily be concealed. Even if he had kept trip reports, it would be a simple matter to omit recording some of the trips or to understate some of the fares collected. The records of receipts he did maintain could easily have omitted or understated the fares, and no tip income was separately shown on the slips. The petitioner's statements to the revenue agents as to the time devoted to his business and his average receipts indicate actual earnings substantially in excess of those reported. The net income petitioner reported on his returns indicated net earnings *231 of only $3.14 per day ($798.26 divided by 254 days) in 1959 and only $3.02 per day ($816.21 divided by 270 days) in 1960. Yet petitioner rented a cab at $6 per day for 36 days in 1960 while his own cab was being repaired. Respondent points out that if petitioner had entered employment as a driver for the Yellow Cab fleet where he would have had the advantage of radio or telephone facilities to help get business, he could have retained from his receipts an average of better than $6 a day (40 percent of $16- $17), plus tips. The foregoing factors lead to the conclusion that petitioner's earnings from his taxicab business were greater than the amounts reported on his tax returns. We do not accept the respondent's reconstruction of petitioner's income upon the basis of earnings of drivers employed by a corporation operating many taxicabs. These had radio or telephone facilities which were not available to petitioner. He owned his own cab and had to bear the expenses of its maintenance. He could work or not, as he chose, and he says that he was remodeling his house and took some time for that. Petitioner should have kept a written and accurate record of his receipts, including tips. *232 [2] Where he has failed to do so, as here, he may not complain if the respondent reconstructs his income by some reasonable formula, and he runs the risk that this will be done. The law does not require that the respondent ascertain the exact amount of the petitioner's receipts. While we do not agree with the amount of income determined by the respondent, we are convinced that the petitioner's receipts were substantially in excess of the amounts reported on his returns. Upon the basis of all the evidence and from our observation of petitioner as a witness, we find that petitioner had net taxable income from his taxicab business, after all allowable deductions, of $2,100 in each of the years 1959 and 1960, including amounts paid him by restaurants. Petitioner has deliberately *233 disregarded the regulations relating to the keeping of adequate records. Therefore, he is liable for additions to the tax on that account. Decision will be entered under Rule 50. Footnotes
1. Section 12-135 of New Orleans City Ordinance No. 1004, relating to the operation of taxicabs in that city, provides, in part: The driver of each taxicab, whether owner or employee, shall keep a trip report upon which he shall enter for each engagement immediately upon completion thereof, the points of origin and destination, and times of beginning and completion, the fare collected and the number of passengers. All entries shall be made legibly and the trip report shall be signed by the driver and turned over to the owner of the cab, who shall preserve them for a period of not less than ninety (90) days.↩
2. Income Tax Regs.: Sec. 1.446-1 General rule for methods of accounting. (a) General rule. * * * (4) Each taxpayer * * * must maintain such accounting records as will enable him to file a correct return. * * * Accounting records include the taxpayer's regular books of account and such other records and data as may be necessary to support the entries on his books of account and on his return, * * *.↩